In the Matter of the Claim of JAMES K. LINTON, Appellant, *v.* NORTH AMERICAN VAN LINES et al., Respondents. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, June 20, 1966.

*Sheldon Hurwitz* for appellant.

*Williams, Williams, Volgenau & Tisdall* (*Joseph C. Tisdall* of counsel), for North American Van Lines and another, respondents.

*Louis J. Lefkowitz, Attorney-General,* for Workmen's Compensation Board, respondent.

GIBSON, P. J. Appeal is taken by the claimant from a decision of the Workmen's Compensation Board which disallowed a claim on the ground that the State of New York did not have jurisdiction thereof. That issue was reviewed by the full board which, by 7 to 5 vote, found "no basis to disturb" the board panel's decision.

Claimant was injured on November 10, 1962 when the tractor-trailer unit which he was operating in the service of respondent employer was in collision with a railroad train near Owego, New York. His injuries rendered him permanently paralyzed and comatose, and, in consequence, evidence pertinent to the issue of jurisdiction had to be adduced from other sources. Workmen's compensation benefits were awarded and paid under the Indiana compensation statute but recourse to the New York act was sought by claimant's committee because medical costs, in this case continuing indefinitely at $1,800 per month, are not payable under the Indiana statute beyond 180 days in cases where medical care will not limit or reduce the amount and extent of the disability or impairment.[1]

At the time of the accident claimant had been a resident of the City of Buffalo for 22 years. His first contact with the employer was in New York in May, 1960, when he read and responded to the employer's advertisement in a Buffalo newspaper offering employment to owner-operators of tractors. In reply, claimant received some literature from the employer and was later visited by one Rutledge, also a New York resident, who was employed by respondent employer as a driver and was being paid by employer to obtain another driver in the Buffalo or New York area. For some time thereafter, with the employer's written permission, claimant worked out of Buffalo as Mr. Rutledge's helper. Eventually it was arranged that claimant would take over Mr. Rutledge's job, at the same time purchasing Mr. Rutledge's tractor; and while in Fort Wayne, Indiana, to return one of the employer's trailers in previous use by Rutledge, claimant signed an employment contract.

For six months claimant operated on a run between New York City and Murray, Kentucky, and during this period was at his home in Buffalo about three times monthly and during this period, as in subsequent periods, received at his home in Buffalo calls transmitting orders and directions from his employer. Thereafter, claimant was sent on other out-of-State trips but

1. Indiana Acts 1929, ch. 172, § 25, as amd. by 1947, ch. 162, § 3.

many trips (and at least 7 of his last 16) continued to be within the State, or to commence or terminate within the State, as appears from the testimony and from trip logs in evidence; and claimant was dispatched not only by employer's dispatching office in Indiana but by dispatching offices or agents elsewhere, including Buffalo. Claimant continued to go to his home in Buffalo when opportunity offered; his pay checks, drawn in Indiana on a Chicago bank were regularly sent there; and orders were occasionally transmitted to him there, his home telephone number being recorded with the dispatchers. On his last trip, claimant was dispatched from New Jersey; he loaded at Yonkers, New York; and was on his way to Aurora, Illinois, when the accident occurred at Owego, New York.

At the time of the accident, and for many years previously, the employer held a certificate issued by the New York Secretary of State to do business in the State of New York and had designated the Secretary of State as its agent to receive service of process in New York and in addition had registered agents in Buffalo, one of whom on occasion dispatched claimant. In its employment contract with claimant, the employer agreed " to maintain and keep in force  *  *  *  so-called workmen's compensation insurance, and to comply with all applicable so-called workmen's compensation laws ". Obviously, the employer has New York coverage.

From the Buffalo newspaper advertisement and from the testimony, it is clear that the employer wished to obtain an additional or replacement driver in the Buffalo area, and this is readily understandable in the light of the employer's business, segmented as it was in multistate areas throughout the continental United States. Claimant's employment was solicited in Buffalo, it was begun and continued in the Buffalo area, and elsewhere in New York, under the direction of a coemployee there; and when, some considerable time later, written employment contracts were entered into, the employment was even then of considerable duration and the first contract, indeed, was signed in Indiana when and because claimant, long since an employee, had occasion to go there to deliver to the employer a trailer which had been used by the coemployee Rutledge, who was based in or working out of the Buffalo area. At the outset of our review, therefore, so much of the board findings as indicates that claimant was hired in Indiana must be held unsupported by substantial evidence, at least to the extent that the important initial contact is concerned; the precise finding being embodied in the broader one, that " The claimant was hired, supervised, paid and controlled from Indiana. " Indeed, in

its ultimate conclusions, based necessarily on this and the other factual findings first made, the board does not touch upon this issue of hiring.

A further finding seems erroneous as a matter of law, that being; "On August 1, 1963, said committee agreed to Indiana jurisdiction and waived any and all rights to workmen's compensation in any other state." The effect of the Indiana proceedings was argued before the board panel first by carrier's counsel and then at some length by claimant's attorney. Testifying before the Referee, the claimant's wife, who is also his committee, said that "the first thing Monday morning", following the accident of the previous Saturday, a representative of the carrier came to the hospital where her husband was under treatment and procured her to sign a paper which she did not know was an application for Indiana workmen's compensation benefits until some three weeks later when a hospital office employee so advised her and at the same time told her that, under the Indiana law, hospital benefits would be paid for no more than 180 days. She thereupon communicated with the carrier's representative who had previously obtained her application and he told her that his company had already authorized additional payments and that she was "not to have anything to worry about". The payments were later terminated. The wife's testimony stands without contradiction in any particular.

That the rights to workmen's compensation benefits of claimant, a New York resident, by his committee appointed by a New York court, could not thus be waived seems clear (Workmen's Compensation Law, §§ 32, 33; *Anderson* v. *Jarrett-Chambers Co.,* 210 App. Div. 543; 215 App. Div. 742, affd. 242 N. Y. 580; 2 Larson, Workmen's Compensation Law, § 85, and cases and texts there cited); but in any event the finding of such a waiver should not have served as one of the predicates of the decision, without explicit determination of the factual issues tendered by the proof of the circumstances; and, finally, to predicate a finding of waiver upon the necessarily implicit finding of out-of-State employment, and thereupon to utilize the waiver to find out-of-State employment and thus to deny New York jurisdiction, constituted at best a bootstrap operation.

Remittal is required, upon determining, as we do, first, that the board's finding of a hiring in Indiana is erroneous, or, at most, is correct and supported by evidence only to the extent that it may indicate the confirmation by written agreement of an employment relationship commenced in New York long before and thereafter continued in New York, the board having failed to deal with the initiation of the relationship, an equally or even

more significant contact and connection with New York; and, second, that the finding of waiver was legally erroneous and unsupported by factual evaluation of the relevant evidence. We have no way of knowing the weight given by the board to these erroneous findings in reaching its ultimate conclusion but we cannot fairly assume that no effect was given them. We proceed, then, to an analysis of the other issues in the light of the applicable guides and rules.

Whether the issue of jurisdiction in this case be deemed a mixed question of law and of fact or a factual one requiring merely supportive evidence of substantiality, reversal seems to us also to be required, on grounds additional to those already stated. " There is no fixed, invariable touchstone by which the presence or absence of jurisdiction in cases like the present one may be determined [and no] single inflexible and conclusive standard for all cases  *  *  * What has developed is an approach whereby certain factors tending to show substantial connection with this State are looked for in the factual patterns of each individual case. If sufficient significant contacts with this State appear so that it can reasonably be said that the employment is located here, then the Workmen's Compensation Board has jurisdiction.  *  *  * If on the other hand the circumstances and elements of the employment are such as to indicate that the employment is in fact located in another State then the claimant is not protected by our statute. " (*Matter of Nashko* v. *Standard Water Proofing Co.*, 4 N Y 2d 199, 200–201.)

The decision before us quite clearly indicates misapprehension on the part of the board as to the application of the rule of *Nashko* (*supra*) and represents, also, a distinct departure from the legal tests applied by this court in conformity with *Nashko*; some of our more recent decisions, indeed, having been rendered subsequent to the board decision in the case before us. (See, e.g., *Matter of Rhodes* v. *Mushroom Transp. Co.*, 23 A D 2d 421, mot. for lv. to app. granted 16 N Y 2d 485; *Matter of Rutledge* v. *Kelly & Miller Bros. Circus*, 24 A D 2d 521, mot. for lv. to app. granted 16 N Y 2d 485; *Matter of Atkinson* v. *Marquette Mfg. Co.*, 24 A D 2d 795.)

The significant New York contacts are many and include claimant's long residence here; the appointment of his committee by a New York court; the occurrence of the accident here; his continued hospitalization and continued incurment of medical expenses in a New York community; his initial contact with the employer in New York, his hiring in New York and his continued relationship with the employer on a local basis, much later

confirmed, it is true, by written agreement prepared and signed elsewhere; claimant's ownership of the tractor operated in the employer's service; the performance of a substantial portion of his work in New York; the transmittal of orders and directions to him at his home in New York, and the payment of his wages there; the formal authorization of the employer to carry or business in New York, the designation of the Secretary of State as its agent and its listing of registered agents in New York, through whom orders were at least occasionally transmitted to the claimant.

The board's particularized findings, some few of which have been quoted, are rather detailed, and commendably so; and they are followed by a brief statement of the board's conclusions. It was determined, first, that " the employer of record was located in Indiana "; but this conceded fact seems to us of no determinative effect. Had the employer been "located" in New York, there would have been no issue. The *Nashko* " test requires a determination as to the location of the *employment* " (4 N Y 2d 199, 201; emphasis supplied); but if it is important that the *employer* was "located" in Indiana, it must then be noted that the employer was also "located" in New York, by the Secretary of State's certificate of authority and by the proof. The second conclusion stated was that the " employer's Indiana office supervised, directed and controlled claimant's work activities "; and while it may be doubted that there was exerted, either from Indiana or from agents and dispatchers in New York and other States, any close or direct supervision, inasmuch as the work by its very nature required none, and the fact of claimant's ownership of the tractor operated in the employer's service, albeit leased by him to the employer, may indicate some dilution of the employer's supervision and control; nevertheless, it is clear from the record that such directions, principally scheduling, as emanated from Indiana were no different from the directions that emanated from dispatchers and agents in New York and elsewhere. Indeed, the direction and control exercised from Indiana seem, upon this record, little more than the " ultimate control " always existing at the highest level of authority, which, in reversing the board's allowance of a somewhat similar claim, we said was not the true test of control as demonstrative of jurisdiction. (See *Matter of Alexander* v. *United Newspaper Mag. Corp.,* 4 A D 2d 890, affd. 5 N Y 2d 820.) Finally, the board held " that claimant's work activities in New York State were transitory and incidental to employer's business in Indiana "; but, again, these self-evident facts do not seem particularly helpful to a decision or to pertain to any recognized

test of jurisdiction. That the work of a tractor-trailer operator is transitory does not attach it indissolubly to one jurisdiction or deprive every interstate operator of coverage in every State except that of his employer's home office.

To the extent that the board's stated conclusions, above set forth, represent true factual findings, supported by evidence, they cannot be disturbed; but insofar as they indicate misapprehension of, or a departure from the rule enunciated in *Nashko* 4 N Y 2d 199, *supra*) we are, of course, required to predicate remittal upon them.

The decision should be reversed and the claim remitted to the Workmen's Compensation Board, with costs to appellant.

REYNOLDS, J. (dissenting). The Workmen's Compensation Board found that the employer's business was located in Indiana and that this interstate truck driver was hired, supervised, paid, directed and controlled from the employer's business office in Indiana; that branch offices were maintained only in California and New Jersey; that there was no terminal or dispatching office in New York (the language in the majority opinion carrying the implication that there was a dispatching office in New York is misleading and without foundation); that the employee's work activities in New York were transitory and incidental to the employer's business in Indiana and that, therefore, New York State has no jurisdiction in this claim. The record contains substantial evidence to support these findings and the resulting conclusion of the full board that it has no jurisdiction in this matter. The alleged " errors of law " advanced by the majority, if present, are trivial, and since there is ample evidence to support the present factual determination, which is the sole test and is the prerogative of the board alone to make, a subterfuge should not be used as a vehicle to return the case to the board in the hope it might reach a different result. There is no basis for the statement that the board misapprehended the application of the rule enunciated in *Matter of Nashko* v. *Standard Water Proofing Co.* (4 N Y 2d 199). Rather this case was passed on by the full board after a complete and thorough examination of all aspects involved. Nor is there any justification for reversal on the grounds that the board might have decided differently if it had had the benefit of our later decisions in *Matter of Rhodes* v. *Mushroom Transp. Co.* (23 A D 2d 421, mot. for lv. to app. granted 16 N Y 2d 485); *Matter of Rutledge* v. *Kelly & Miller Bros. Circus* (24 A D 2d 521, mot. for lv. to app. granted 16 N Y 2d 485) and *Matter of Atkinson* v. *Marquette Mfg. Co.* (24 A D 2d 795). Not only is this a novel approach to the review of factual determinations by the board,

but moreover, while it is correct that the full board's decision of April 23, 1965 was rendered prior to our decisions in the above cases (*Rhodes,* July 13, 1965; *Rutledge,* June 2, 1965; *Atkinson,* October 22, 1965), the board itself had in all of these very cases found jurisdiction well prior to its decision in the present case (*Rhodes,* July 23, 1964; *Rutledge,* April 3, 1964; *Atkinson,* November 12, 1964). Thus while the board may have lacked the benefit of our conclusions affirming its decisions in *Rhodes, Rutledge* and *Atkinson,* it was clearly aware of the applicable tests as to its jurisdiction. Finally, the fact that there may be other decisions advanced in which there were, perhaps, less contacts with New York and yet jurisdiction has been found by the board and affirmed by this court is of absolutely no import. Consistency on the part of the board is not a requirement under our statute, and we thus have no authority to impose it (*Matter of Szatkowski* v. *Bethlehem Steel Co.,* 1 A D 2d 716, 717). Many of the decisions finding New York jurisdiction have, in my opinion, made little sense (see my concurrence in *Matter of Rutledge* v. *Kelly & Miller Bros. Circus,* 24 A D 2d 521, 522), but the instant decision is far more fundamentally in error when it suggests to the board that it find jurisdiction when the board has factually found none to exist.

HERLIHY, TAYLOR and AULISI, JJ., concur with GIBSON, P. J.; REYNOLDS, J., dissents and votes to affirm in an opinion.

Decision reversed and claim remitted to the Workmen's Compensation Board, with costs to appellant.